# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION

| | |
|---|---|
| ACTIVE B, LLC, | CASE NO. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| SMART VISION, LLC D/B/A TRUE FRESH | |
| Defendant. | |

COMES NOW Plaintiff ACTIVE B, LLC ("ACTIVE"), by and through its attorneys, Koley Jessen, P.C., LLO, and for its Complaint against Defendant Smart Vision, LLC d/b/a True Fresh ("True Fresh") states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. ACTIVE is a Delaware limited liability company having its principal place of business in Minneapolis, MN.

2. Upon information and belief, True Fresh is an Iowa limited liability company having its principal place of business at what appears to be a residential address in West Des Moines, Iowa.

3. Upon information and belief, True Fresh's owner and founder is an individual named "Yasir Al Imami" who also resides in Wes Des Moines, Iowa.

4. This Court has personal jurisdiction over True Fresh pursuant to Iowa R. Civ. P. 1.306 and other provisions of law, including Fed. R. Civ. Pro. 4, since True Fresh is a limited liability company, which was both organized in the State of Iowa and has its principal place of business there.

5. This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. 1331 and 15 U.S.C. § 15 because ACTIVE has asserted claims against True Fresh arising under the laws of the United States, pursuant to 15 U.S.C.S. §§ 12 *et seq*.

6. This Court also has diversity jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because ACTIVE and True Fresh have complete diversity of citizenship and because the amount in controversy asserted by ACTIVE exceeds $75,000.00, exclusive of interest and costs.

7. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 15 because True Fresh resides in the Southern District of Iowa and a substantial part of the events giving rise to the present dispute occurred in the Southern District of Iowa.

## FACTUAL BACKGROUND
### Amazon Practices, Generally

8. ACTIVE is a leader in the sale of appliance cleaning products on various online platforms, including on Amazon where ACTIVE routinely runs online promotional sales deals for customers.

9. In order to sell its products on Amazon, ACTIVE obtained Amazon Standard Identification Numbers (individually, an "ASIN" and plurally "ASIN's") for its products.

10. ASIN's are unique, 10-digit alphanumeric numbers that uniquely (and exclusively) identify a given product on Amazon.

11. An ASIN is required for a product before such product can be sold on Amazon.

12. As ASIN's are unique and are associated with a specific product, authorized resellers and retailers occasionally use the same ASIN to market a specific product.

13. Once an ASIN is obtained, Amazon permits sellers to run a limited number of promotional discounts for a given product for limited periods of time.

14. These Amazon deals include "1-Day lightning deals," "Prime Day Sales," holiday

deals, and "7-Day Deals" (collectively, the "Amazon Deal(s)") where specific products are discounted to customers, and during which, Amazon promotes the deal via special product placement and unique badging which showcases the deal to potential buyers.

15. Participation in these Amazon Deals (including the "7-Day Deals") consistently generates substantial sales increases and is necessary for a seller to remain competitive in the market.

16. To qualify to run an Amazon Deal, Amazon requires sellers to set their product's discounted price at least 20% lower than the lowest price at which the specific product (ASIN) was ever offered over the preceding 30 days.

17. In order for a seller to participate in one of the Amazon Deals, a seller must schedule, in advance, the dates when the deal will be live on Amazon.

18. Sellers are required to pay a nonrefundable fee to participate in Amazon's "7-Day Deals."

19. Competitors are not given advance notice of when a seller's Amazon Deal will begin.

20. When a seller's Amazon Deal is live, Amazon promotes the deal via special product placement and unique badging which showcases to customers the great deal.

21. In addition, during these deals, Amazon provides the seller's product with increased visibility and exposure in the marketplace leading to vastly increased sales and exposure for brands that are offered the opportunity to participate in these deals.

22. Prior to beginning an Amazon Deal, ACTIVE spends significant time and money working with publications, advertisers, and influencers to promote the deal.

**Fraudulent Activities Involving ACTIVE's Product**

23. One of the products ACTIVE sells on Amazon is ACTIVE's 24-Tablet Washing Machine Cleaner, which (at all relevant times) has been assigned ASIN B08DVFZTTG (hereinafter, the "Product(s)").

24. ACTIVE ordinarily lists the Product for sale on Amazon for $17.95; however, ACTIVE occasionally offers the Product for a limited time at the promotional sales price of $14.36.

25. ACTIVE was scheduled to run a Fall Prime Day Sale from October 10-11, 2023.

26. On or about October 3, 2023, ACTIVE discovered that a business from Lahore, Pakistan identified as "Genuine Products 360" suddenly (and without permission) began selling ACTIVE's Product (using the Product's ASIN) on Amazon at the severely discounted price of $10.99.

27. "Genuine Products 360" is not, and has never been, an authorized reseller of ACTIVE's products, and ACTIVE has never sold any of its products to "Genuine Products 360" or to anyone located in Pakistan more generally.

28. The price at which "Genuine Products 360" was selling ACTIVE's Product—$10.99 per unit—was well below any profitable margin for ACTIVE to sell the Product, let alone a reseller, meaning that the Product was being sold at a loss. This price was also drastically lower than ACTIVE's promotional sales price of $14.36.

29. However, as "Genuine Products 360" sold the Product using ACTIVE's ASIN at the artificially reduced price, per Amazon's deal policies, ACTIVE was forced to cancel its Fall Prime Day Sale, and ACTIVE could not run a new Amazon Deal in connection with the Product for another thirty (30) days unless it offered the Product for 20% less than $10.99 (or $8.79), which was not economically feasible.

30.     In other words: because of "Genuine Products 360's" unauthorized sale and price manipulation in October of 2023, ACTIVE was effectively prohibited from participating in promotional activities on Amazon during the holiday shopping season.

31.     The next Amazon Deal that ACTIVE was scheduled to run after the aforementioned incident in October 2023 was a 7-day deal from March 11-17, 2024.  On the night of March 11, 2024, ACTIVE discovered that "Genuine Products 360," once again, was selling the Product on Amazon at the severely discounted price of $10.99.

32.     Like before, these unauthorized activities by "Genuine Products 360" sabotaged ACTIVE's Amazon Deal by artificially resetting the Product's lowest recent price to $10.99, thus effectively barring ACTIVE from engaging in promotional activities on Amazon for another 30-day period—right in the midst of the popular "spring cleaning" season.

33.     Notably, "Genuine Products 360" had no prior sales history on Amazon before October 3, 2023, and—prior to October 3, 2023—"Genuine Products 360" had not sold (or listed for sale) any products on Amazon.

34.     "Genuine Products 360" has never sold, or offered for sale, any product on Amazon *other than* ACTIVE's Product.

35.     Upon discovering "Genuine Products 360's" unauthorized activities noted above - in both instances in October of 2023 and March of 2024 - ACTIVE purchased all units of the Product that "Genuine Products 360" had for sale on Amazon and, to ACTIVE's surprise, found that the Products they received were, in fact, authentic ACTIVE Products.

36.     The true source of the Products sold by "Genuine Products 360" could not be conclusively determined from publicly available information because the orders were "fulfilled by Amazon"—meaning that the Products had been sent to Amazon, in advance, for processing,

packaging, and shipping by Amazon via an Amazon distribution center.

37. Utilizing "fulfilment by Amazon" allowed "Genuine Products 360" to commingle the Products it was selling with those already being sold through Amazon by ACTIVE, and thus, conceal its true identity from the public.

38. Because ACTIVE does not sell its Product in Pakistan, "Genuine Products 360" (or someone acting on "Genuine Products 360's" behalf—to wit, and upon information and belief, True Fresh or its agents) must have been acquiring ACTIVE's Products and shipping them to Amazon from somewhere in the United States. ACTIVE expects to have evidentiary support for this specific allegation after a reasonable opportunity for further investigation and discovery.

39. Nevertheless, several of the orders ACTIVE placed with "Genuine Products 360" were never delivered, suggesting that "Genuine Products 360" sold units of the Product that it never sent to Amazon as inventory (and that it had no intention to fulfill).

40. In both instances where "Genuine Products 360" sabotaged ACTIVE's Amazon Deal in October 2023 and March 2024, the expenses incurred by ACTIVE to promote the deal through publications, advertisers, and influencers were lost.

41. Amazon punishes *products* (specifically, ASIN's) that have bad shipment metrics, even if the products in question are sold by an unauthorized seller.

42. Accordingly, "Genuine Products 360's" failure to fulfill orders for the Product also damages the value of ACTIVE's brand—both within Amazon via its shipment metrics, and in the minds of any customers who did not receive the Products they ordered.

**True Fresh's Involvement in, and Benefit from,
Genuine Products 360's Fraudulent Scheme**

43. True Fresh is one of ACTIVE's competitors in the appliance cleaning product-market.

44. Historically, ACTIVE's sales of the Product on Amazon have greatly exceeded those of True Fresh's competing appliance cleaning product.

45. On October 3, 2023—**the exact same day that "Genuine Products 360" suddenly (and without permission) began selling ACTIVE's Product (using the Product's ASIN) on Amazon at the severely discounted price of $10.99 in order to suspend ACTIVE's Fall Prime Day Deal**—True Fresh introduced a "7-Day Deal" on Amazon for its similar, competing product.

46. Thereafter, on March 12, 2024—**the morning after the night when ACTIVE discovered that "Genuine Products 360" was, once again, selling ACTIVE's Product on Amazon for $10.99 (i.e., at a loss) resulting in ACTIVE's "7-day deal" being suspended**—True Fresh, like clockwork, once again introduced a "7-day deal" for its competing product.

47. In both instances, "Genuine Products 360" sabotaged ACTIVE's deal within one (1) day before True Fresh was starting its own Amazon Deal, and as a result, True Fresh received sales spikes and captured market share in the weeks following "Genuine Products 360's" sudden predatory price decreases, as a result of ACTIVE being effectively locked out from its promotional activities, during these peak shopping seasons.

48. The business name listed for "Genuine Products 360" on Amazon is "Muhammad Ahmad Nawaz" and the business address listed is "H NO E20/21-1, ST NO 5, MOH FIRDOUS PARK, GHAZI ROAD, LAHORE, PAKISTAN, 54000."

49. Upon information and belief, nearly all of True Fresh's employees live in Pakistan, and more than half of True Fresh's employees live in or near *Lahore*, Pakistan—including several who, according to their own social media (e.g., Facebook and/or LinkedIn) profiles, reside in the *exact same zip code* as the address listed on "Genuine Products 360's" Amazon page.

50. Upon information and belief, True Fresh and Genuine Products participated in this predatory pricing scheme for mutual gain. Specifically, because True Fresh is one of ACTIVE's direct competitors, True Fresh needed another entity ("Genuine Products 360") to resell ACTIVE's Product at predatory prices in order to sabotage ACTIVE's promotional efforts while at the same same time disguising True Fresh's involvement in this scheme. Similarly, "Genuine Products 360" needed an entity in the United States (True Fresh) to acquire and ship the Products to Amazon for fulfillment. As such, discovery will show that True Fresh and "Genuine Products 360" had the means, ability, occasion, and incentive to participate in the foregoing acts and actively engaged in such activities.

51. Upon information and belief, True Fresh conspired with "Genuine Products 360" to orchestrate the foregoing calculated attacks on ACTIVE's economic well-being and market position, as described herein. ACTIVE expects to have evidentiary support for this specific allegation after a reasonable opportunity for further investigation and discovery.

52. As a direct and proximate result of True Fresh and "Genuine Products 360's" price sabotage scheme, ACTIVE lost out on more than $3,000,000 in sales revenue from Q4 of 2023 through Q2 of 2024.

## FIRST CLAIM FOR RELIEF
*Tortious Interference with Prospective Business Expectancy*

53. ACTIVE incorporates all the allegations in the foregoing paragraphs as if fully set forth herein.

54. At all times material hereto, ACTIVE has had an agreement with Amazon to sell cleaning products, including the Product, to customers through Amazon's online platform.

55. ACTIVE has, or expected to have, prospective contractual or business relationships with its customers who made online purchases on Amazon.

56. ACTIVE's participation in the Amazon Deals (including the "7-Day Deals") historically generates substantial sales increases for ACTIVE on a reliably consistent basis.

57. As one of ACTIVE's competitors in the marketplace and a fellow seller on Amazon, True Fresh knew, or should have known, of ACTIVE's agreement to sell cleaning products, including the Product, to customers through Amazon's online platform.

58. As one of ACTIVE's competitors in the marketplace and a fellow seller on Amazon, True Fresh knew, or should have known, of ACTIVE's historical and prospective relationships with customers in the appliance cleaning product-space.

59. Upon information and belief, True Fresh conspired and collaborated with "Genuine Products 360" to sabotage ACTIVE's eligibility to participate in Amazon Deals by artificially lowering the price of the Product (without ACTIVE's permission) via the unauthorized resale of the Product under ACTIVE's ASIN.

60. By conspiring and collaborating with "Genuine Products 360" to sabotage ACTIVE's Amazon Deals, True Fresh intentionally and improperly caused Amazon to prevent ACTIVE from participating in promotional sales through Amazon's online platform.

61. By conspiring and collaborating with "Genuine Products 360" to sabotage ACTIVE's Amazon Deals, True Fresh intentionally and improperly prevented ACTIVE from participating in promotional sales with ACTIVE's historical and prospective customers.

62. By conspiring and collaborating with "Genuine Products 360" to sabotage ACTIVE's Amazon Deals, True Fresh intentionally and improperly interfered with ACTIVE's relationships with its historical and prospective customers on Amazon's online platform.

63. By conspiring and collaborating with "Genuine Products 360" to sabotage ACTIVE's Amazon Deals, True Fresh intended to financially injure or destroy ACTIVE.

64. As a direct and proximate result of True Fresh's intentional interference, ACTIVE was damaged in an amount to be determined at trial, which damages include, *inter alia*, lost profits.

WHEREFORE, Plaintiff ACTIVE B, LLC respectfully requests that the Court enter judgment in its favor and against Defendant Smart Vision, LLC d/b/a True Fresh in an amount to be determined at trial, plus all pre-judgment, post-judgment interest and reasonable attorneys' fees as allowed by law, together with expenses, costs, and for such other, further, and additional relief as this Court determines to be just and proper.

## SECOND CLAIM FOR RELIEF
*Violations of the Clayton Act — 15 U.S.C.S. § 12 et seq.*

65. ACTIVE incorporates all the allegations in the foregoing paragraphs as if fully set forth herein.

66. Section 13a of the Clayton Act (15 U.S.C.A. § 12 *et. seq.*) provides, in relevant part, as follows:

> ***It shall be unlawful for any person engaged in commerce, in the course of such commerce***, [1] to be a party to, or assist in, any transaction of sale, or contract to sell, which discriminates to his knowledge against competitors of the purchaser, in that, any discount, rebate, allowance, or advertising service charge is granted to the purchaser over and above any discount, rebate, allowance, or advertising service charge available at the time of such transaction to said competitors in respect of a sale of goods of like grade, quality, and quantity; [2] to sell, or contract to sell, goods in any part of the United States at prices lower than those exacted by said person elsewhere in the United States for the purpose of destroying competition, or eliminating a competitor in such part of the United States; ***or***, [3] ***to sell, or contract to sell, goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor***.

15 U.S.C.A. § 13a (emphasis added).

67. Section 15(a) of the Clayton Act (15 U.S.C.A. § 15 *et. seq.*) provides, in relevant part, as follows:

> Except as provided in subsection (b), any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws

10

may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C.A. § 15(a).

68. "Antitrust laws," as used within 15 U.S.C.S. §15(a), includes the Clayton Act. *See* 15 U.S.C.A. § 12 ("(a) Antitrust laws," as used herein, includes …this Act. … (b) This Act may be cited as the 'Clayton Act'.").

69. Upon information and belief, in October of 2023, under True Fresh's direction and at True Fresh's request, "Genuine Products 360" and True Fresh collaborated to sell ACTIVE's Product, using ACTIVE's ASIN, without ACTIVE's permission, at $10.99 per unit.

70. Upon information and belief, in March of 2024, under True Fresh's direction and at True Fresh's request, "Genuine Products 360" and True Fresh collaborated to sell ACTIVE's Product, using ACTIVE's ASIN, without ACTIVE's permission, at $10.99 per unit.

71. The price at which "Genuine Products 360" and True Fresh collaborated to sell ACTIVE's Product—$10.99 per unit—was well below any profitable margin for ACTIVE (or any reseller) to sell the Product, meaning that the Product was being sold at a loss.

72. Selling the Product at a loss constitutes an unreasonably low price.

73. Upon information and belief, True Fresh collaborated with "Genuine Products 360" to sell ACTIVE's Product at an unreasonably low price, for the purpose of destroying competition and/or eliminating ACTIVE as True Fresh's competitor.

74. As a direct and proximate result of "Genuine Products 360" and True Fresh's above-described conduct, ACTIVE suffered damages in amounts to be proven at trial.

75. Per, *inter alia*, 15 U.S.C.A. § 15(a), ACTIVE is entitled to recover threefold the amount of the damages it has sustained, together with the costs of this suit and reasonable attorneys' fees.

WHEREFORE, Plaintiff ACTIVE B, LLC respectfully requests that the Court enter judgment in its favor and against Defendant Smart Vision, LLC d/b/a True Fresh in an amount to be determined at trial, plus all allowable pre-judgment and post-judgment interest, together with reasonable attorneys' fees, expenses, and costs, and for such other, further, and additional relief as this Court determines to be just and proper.

### THIRD CLAIM FOR RELIEF
*False Advertising or Description —15 U.S.C. § 1125*

76. ACTIVE incorporates all the allegations in the foregoing paragraphs as if fully set forth herein.

77. Upon information and belief, in October of 2023, under True Fresh's direction and at True Fresh's request, "Genuine Products 360" and True Fresh collaborated to advertise ACTIVE's Product, using ACTIVE's ASIN, without ACTIVE's permission, for sale on Amazon at $10.99 per unit.

78. Upon information and belief, in March of 2024, under True Fresh's direction and at True Fresh's request, "Genuine Products 360" and True Fresh collaborated to advertise ACTIVE's Product, using ACTIVE's ASIN, without ACTIVE's permission, for sale on Amazon at $10.99 per unit.

79. The foregoing advertisements were false and misleading because they advertised ACTIVE's Product for sale using the ACTIVE's ASIN and without ACTIVE's consent.

80. Advertising ACTIVE's Product for sale using the Product's ASIN without ACTIVE's authorization or consent was and is likely to cause confusion, cause mistake, or to

12

deceive as to the affiliation, connection, or association of "Genuine Products 360" with ACTIVE. *See* 15 U.S. Code § 1125(a)(1)(A).

81. Advertising ACTIVE's Product for sale using the Product's ASIN without ACTIVE's authorization or consent was and is likely to cause confusion, cause mistake, or to deceive as to the origin of the Product. *See* 15 U.S. Code § 1125(a)(1)(A).

82. Advertising ACTIVE's Product for sale using the Product's ASIN without ACTIVE's authorization or consent was and is likely to cause confusion, cause mistake, or to deceive as to ACTIVE's (non-existent) sponsorship and/or approval of "Genuine Products 360's" (unauthorized) sale of the Product. *See* 15 U.S. Code § 1125(a)(1)(A).

83. Indeed, the very name, "Genuine Products 360," appears calculated to create the false impression of legitimacy among consumers.

84. The foregoing advertisements deceived or had the capacity to deceive consumers since they were or could have been led to believe that ACTIVE approved and/or sponsored "Genuine Products 360's" unauthorized resale of the.

85. The foregoing advertisements deceived or had the capacity to deceive consumers because ACTIVE did not approve and/or sponsor "Genuine Products 360's" unauthorized sale of ACTIVE's Product, but this fact could not be discovered by the public from "Genuine Products 360's" Amazon advertisements of ACTIVE'S Product.

86. The foregoing deception had a material effect on online customers purchasing decisions, since it caused confusion as to both the source and promotional price of ACTIVE's Product.

87. The above described advertisements falsely created the impression that ACTIVE could, and would, sell the Product at the impossibly low price of $10.99 per unit, thus creating a likelihood of confusion in the marketplace.

88. As a direct and proximate result of "Genuine Products 360" and True Fresh's above-described conduct, ACTIVE suffered damages in amounts to be proven at trial.

WHEREFORE, Plaintiff ACTIVE B, LLC respectfully requests that the Court enter judgment in its favor and against Defendant Smart Vision, LLC d/b/a True Fresh in an amount to be determined at trial, plus all pre-judgment and post-judgment interest, and reasonable attorneys' fees allowed by law, as well as expenses, costs, and for such other, further, and additional relief as this Court determines to be just and proper.

**FOURTH CLAIM FOR RELIEF**
*Unjust Enrichment*

89. ACTIVE incorporates all the allegations in the foregoing paragraphs as if fully set forth herein.

90. Upon information and belief, True Fresh conspired and collaborated with "Genuine Products 360" to sabotage ACTIVE's eligibility to participate in Amazon Deals by artificially lowering the price of the Product (without ACTIVE's permission) via the unauthorized resale of the Product under ACTIVE's ASIN.

91. In sabotaging ACTIVE's eligibility to participate in the Amazon Deals, as described above, True Fresh (by and through "Genuine Products 360") prevented ACTIVE from running Amazon Deals (and thus, pricing its products competitively) during peak seasons and, thereby, unfairly and inequitably redirected customers to its own (now lower-priced) products.

92. True Fresh received sales spikes and captured market share in the weeks following "Genuine Products 360's" sudden predatory price decreases for the Product and, accordingly, was

unjustifiably enriched at ACTIVE's expense.

93. The circumstances of True Fresh's enrichment, as described above, make it unjust for True Fresh to retain the benefit of its misdeeds.

94. In justice and fairness, True Fresh should be required to disgorge the profits it realized as a result of its unfair and inequitable behavior.

WHEREFORE, Plaintiff ACTIVE B, LLC respectfully requests that the Court enter judgment in its favor and against Defendant Smart Vision, LLC d/b/a True Fresh in an amount to be determined at trial, plus all pre-judgment, post-judgment interest and reasonable attorneys' fees as allowed by law, together with expenses, costs, and for such other, further, and additional relief as this Court determines to be just and proper.

## FIFTH CLAIM FOR RELIEF
*Civil Conspiracy*

95. ACTIVE incorporates all the allegations in the foregoing paragraphs as if fully set forth herein.

96. Upon information and belief, True Fresh and "Genuine Products 360" had an understanding and agreement to harm ACTIVE, as described in greater detail above. ACTIVE expects to have evidentiary support for this specific allegation after a reasonable opportunity for further investigation and discovery.

97. Upon information and belief, True Fresh and "Genuine Products 360" intended to, and did, cooperate and act towards the end of harming ACTIVE and enriching True Fresh, as described herein.

98. As True Fresh or its agents, upon information and belief, committed, directed, encouraged, and/or assisted "Genuine Products 360" in the wrongful conduct described herein,

True Fresh is jointly and severally liable for the harm caused by "Genuine Products 360's" tortious conduct, and vice versa. *Basic Chems., Inc. v. Benson*, 251 N.W.2d 220, 233 (Iowa 1977).

WHEREFORE, Plaintiff ACTIVE B, LLC respectfully requests that the Court enter judgment in its favor and against Defendant Smart Vision, LLC d/b/a True Fresh in an amount to be determined at trial, plus all pre-judgment, post-judgment interest and reasonable attorneys' fees as allowed by law, together with expenses, costs, and for such other, further, and additional relief as this Court determines to be just and proper.

## SIXTH CLAIM FOR RELIEF
*Preliminary Injunction*

99. ACTIVE incorporates all the allegations in the foregoing paragraphs as if fully set forth herein.

100. In light of the foregoing allegations, there is a reasonable probability that ACTIVE will succeed on the merits.

101. By advertising ACTIVE's Product for sale on Amazon using ACTIVE's ASIN and at predatory prices and thereafter failing to fulfill the orders placed for the Product, "Genuine Products 360" and, upon information and belief, its co-conspirator, True Fresh, are causing irreparable damage to ACTIVE's brand—both within Amazon (via the Product's deteriorating shipment metrics), and in the minds of any customers who did not receive the Products they ordered from "Genuine Products 360."

102. The balance of harms between (1) the irreparable harm described herein and (2) the harm associated with restricting True Fresh from engaging in wrongful corporate sabotage weighs in favor of enjoining True Fresh's conduct.

103. Indeed, True Fresh has no legitimate, lawful right or interest in directing, encouraging, and/or assisting "Genuine Products 360" or anyone else in reselling ACTIVE's

products, without ACTIVE's permission, so True Fresh should not reasonably oppose the injunctive relief sought by ACTIVE herein.

104. The public interest supports the granting of an injunction in this matter as the legislature has already codified Iowa's public policy against the perpetuation of fraud on consumers, as "Genuine Products 360" and, upon information and belief, True Fresh, are engaging in here. *See e.g.,* Iowa Code Ann. §§ 714.16, 714H.5.

105. Furthermore, applicable provisions of the Lanham Act—specifically, 15 U.S. Code § 1125(c)—support the granting of injunctive relief in this case.

106. Section 1125(c)(1) of the Lanham Act (15 U.S. Code § 1125(c)) provides:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S. Code § 1125(c).

107. ACTIVE's trademark, "ACTIVE," is unique and inherently distinctive or has acquired distinctiveness through its use in the marketplace over time.

108. The "ACTIVE" mark has been registered by ACTIVE with the United States Patent and Trademark Office at US Registration Numbers: 6095378 and 7365955

109. The "ACTIVE" mark has been used in commerce by ACTIVE at all times relevant to the present dispute.

110. By conspiring and collaborating with "Genuine Products 360" to market and sell ACTIVE's products in commerce, using ACTIVE's brand and the Product's ASIN,

True Fresh is likely to cause dilution by blurring or dilution by tarnishment of ACTIVE's mark.

111. Thus, the Lanham Act, *inter alia* 15 U.S. Code § 1125(c), entitles ACTIVE to an injunction against True Fresh.

WHEREFORE, Plaintiff ACTIVE B, LLC respectfully requests that the Court (1) enter judgment in its favor and against Defendant Smart Vision, LLC d/b/a True Fresh in an amount to be determined at trial; (2) enter an order enjoining True Fresh from advertising or selling or directing, encouraging, and/or assisting "Genuine Products 360" or any other agent or third party from reselling ACTIVE's products; (3) award ACTIVE all allowable pre-judgment, post-judgment interest and reasonable attorneys' fees as allowed by law, together with expenses, and costs; and (4) award ACTIVE such other, further, and additional relief as this Court determines to be just and proper.

Dated:  June 14, 2024.

ACTIVE B, LLC, Plaintiff,

By: */s/ Adam J. Wachal*
Adam Wachal, #AT0010448
Gabreal Belcastro - *Pro Hac Vice Application to be Submitted*
KOLEY JESSEN P.C., LLO
1125 South 103 Street, Suite 800
Omaha, NE  68124
(402) 390-9500;
(402) 390-9005 (facsimile)
Adam.Wachal@koleyjessen.com
Gabreal.Belcastro@koleyjessen.com

*Attorneys for Plaintiff*